1  WEDGEWOOD
   Office of the General Counsel
2    Alan M. Dettelbach (SBN 137540)
     adettelbach@wedgewood-inc.com
3    Seth P. Cox (SBN 277239)
     scox@wedgewood-inc.com
4    Julie A. Choi (SBN 281100)
     jchoi@wedgewood-inc.com
5    Elaine Yang (SBN 285318)
     eyang@wedgewood-inc.com
6  2015 Manhattan Beach Blvd., Suite 100
   Redondo Beach, CA 90278
7  Telephone:  (310) 640-3070
   Facsimile:   (310) 640-3090
8
   Attorneys for Plaintiffs
9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12  | FALCON VENTURES, LLC; SPANISH FALCON LIMITED; individually and derivatively on behalf of HAYSTACK VENTURES INVERSIONES SARL, | **Case No.** |
    | --- | --- |

13

14                                                        **VERIFIED COMPLAINT FOR BREACH OF CONTRACT; BREACH OF FIDUCIARY DUTY; VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT; ACCOUNTING; CONVERSION; CONSTRUCTIVE TRUST; AND UNJUST ENRICHMENT**

15                                 Plaintiffs,

16                      vs.

17  HAYSTACK VENTURES INTERNATIONAL, LLC; JEFFREY OSCODAR; HAYSTACK VENTURES ADVISORS,

18

19                                 Defendants,

20  and                                                **DEMAND FOR JURY TRIAL**

21  HAYSTACK VENTURES INVERSIONES SARL,

22                      Nominal Defendant.

23

24

25

26

27

28

Plaintiffs Falcon Ventures LLC and Spanish Falcon Limited (collectively referred to as "Plaintiffs") by and through their undersigned attorneys, hereby submit this Complaint ("Complaint") on their own behalf as well as for the benefit of nominal defendant Haystack Ventures Inversiones Sarl ("HVIS") against certain of its officers and directors seeking to remedy Defendants Haystack Ventures International, LLC's, Jeffrey Oscodar's, and Haystack Ventures Advisors' (collectively referred to as "Defendants") breaches of fiduciary duties, unjust enrichment, and violations of the Securities Exchange Act among other things, from 2015 to the present (the "Relevant Period") and that have caused substantial monetary losses to Plaintiffs and HVIS and other damages.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction of this action under federal question jurisdiction pursuant to 28 U.S.C. §1331.  This Court has exclusive jurisdiction, pursuant to §27 of the Securities Exchange Act, 15 U.S.C. §§78aa, because this action asserts claims under Section 10(b) of the Exchange Act, and has supplemental jurisdiction over the non-federal claims asserted herein under 28 U.S.C. §1367(a).

2.  Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial portion of the transactions and wrongdoing complained of herein, have occurred within this District.

## PARTIES

3.  Plaintiff Spanish Falcon Limited ("Spanish Falcon") is a limited liability private exempt company organized under the laws of Malta, with a registered office at 171 Old Bakery Street, Valletta VLT 1455, Malta.  Spanish Falcon is a shareholder of Nominal defendant HVIS.

4.  Plaintiff Falcon Ventures, LLC ("Falcon Ventures") is a limited liability

COMPLAINT

company organized under the laws of Delaware, USA with a registered office at 2015 Manhattan Beach Blvd., Suite 100, Redondo Beach, California.  Falcon Ventures is the sole owner of Plaintiff Spanish Falcon.

5.   Nominal defendant Haystack Ventures Inversiones, Sarl ("HVIS") is a "*societe par actions simplifiee*" incorporated and existing under the laws of Luxembourg with a registered office at 9, rue Gabriel Lippmann, Parc d'Activite Syrdall 2, L-5365 Munsback, Grand-Duchy of Luxembourg.

6.   Defendant Haystack Ventures International, LLC ("HVI") is a limited liability company incorporated and existing under the laws of Delaware, USA, with a registered office at 16192 Coastal Highway, Lewes, Delaware, USA.  HVIS is a shareholder of Nominal defendant HVIS.

7.   Defendant Jeffrey Oscodar ("Oscodar") is a Director of the Board of Nominal defendant HVIS.  Oscodar is also the President and Manager of Defendant HVI and the primary representative of HVIS during the Relevant Period.

8.   Defendant Haystack Ventures Advisors ("HVA") is a "*societe a responsabilitie limitte*" incorporated and existing under the laws of Luxembourg with a registered office at 9, rue Gabriel Lippmann, Parc d'Activite Syrdall 2, L-5365 Munsback, Grand-Duchy of Luxembourg.  Defendant Oscodar is the primary representative of HVA during the Relevant Period.

## FACTUAL ALLEGATIONS

9.       In or around 2015, Defendants were in discussions with Plaintiffs regarding the "opportunity" to invest in HVIS, to facilitate the purchase, investment, holding, management, refurbishment, renovation, and sale of real estate properties in Spain.

10.      Defendants made representations to Plaintiffs regarding the

COMPLAINT

operation of HVIS in order to induce Plaintiff to enter the investment transaction that ultimately turned out to be false.

11.     Among other misrepresentations, in or about 2015 Defendant Oscodar represented on behalf of Defendant HVI to Plaintiffs that as a shareholder, Plaintiffs would be permitted access to examine the books and records of HVIS; that Plaintiffs would be entitled to any financial information about the performance of HVIS; that no action would be taken with respect to certain matters without express approval of the Supervisory Board (on which Plaintiffs' maintained representation), and that all transactions would be conducted in good faith, among other things.

12.     Defendant Oscodar again made such representations on behalf of Defendant HVI on or about February 1, 2016 in writing.  Accordingly, in reliance on Defendants' misrepresentations and inducements, on or about February 1, 2016, Plaintiff Spanish Falcon entered into a Shareholders' Agreement ("Shareholders' Agreement") with Defendant HVI.

13.     The Shareholders' Agreement incorporated many of Defendants' misrepresentations, including, but not limited to, the following:

> "3.6    Daily operations of [HVIS] will be guided by Haystack Advisors, pursuant to the service agreement to be entered into between Haystack Advisors and [Nominal defendant HVIS], as described below at Clause 15, Item 15."

> "3.7    [HVIS's] activities will be overseen by a supervisory board (the "Supervisory Board") comprised of two members (the "Supervisors"):
>        (a) One supervisor nominated by [HVI]; and
>        (b) One supervisor nominated by [Spanish Falcon]."

> "3.8    [HVIS] shall take no action (and neither the Shareholders nor the Board shall authorize any action) in respect of the matters set forth in Schedule 1 hereto (the "Reserved Matters" [which includes entering into any agreement with respect to the acquisition of Properties or of a

4

Project]), without the prior express approval of the Supervisory Board.

"7.6 [HVIS] will pay reasonable and customary operating expenses for [HVIS] as they are incurred. Such operating expenses will include in particular (a) Management Fees (as defined below at Clause 15.2), (b) attorneys' and accountants' fees, and any fees of other related professionals, and (c) registration, domiciliation and associated administrative expenses."

"8.2 Each Shareholder and its authorized representative shall be allowed access at all reasonable times to examine the books and records of the Company."

"8.3 [HVIS] shall supply each Shareholder with the financial information necessary to keep the Party informed about how effectively the Business of [HVIS] is performing and in particular shall supply each party with:

(a) a copy of the accounts of [HVIS], certified by the auditor of the [HVIS] (if any) and prepared in accordance with the laws applicable in and the accounting standards, principles and practices generally accepted in Luxembourg, within 90 days of the end of the year to which the audited accounts relate; and
(b) monthly unaudited management accounts of the [HVIS] (comprised of the balance sheet and profit & loss statement)."

"8.4 [HVIS] shall maintain the books and records in a way that allocates income and expenses between the various projects."

"8.5 Each Party shall be entitled to require [HVIS], and [HVIS] shall as soon as possible comply with such a request, to provide any documents, information and correspondence necessary, including financial statements and computations (at the cost the Party making the request) to enable the relevant Party to comply with filing, elections, returns or any other requirements of any revenue or tax authority."

COMPLAINT

"24.1  All transactions entered into between any Parties shall be conducted in good faith . . ."

"24.2  Each Party shall at all times act in good faith towards the others and shall use all reasonable endeavors to ensure that this Agreement is observed."

14.    As referenced in the Shareholders' Agreement, on or about February 1, 2016, Defendant Oscodar on behalf of Defendant HVI represented to Plaintiffs that Haystack Ventures Advisors would serve as an advisor for HVIS and that HVIS would be entitled to terminate this role upon any material breach.  This representation later turned out to be false.  In reliance on this misrepresentation, Plaintiffs agreed to HVIS entering into an Advisory Services Agreement ("ASA") with Defendant Haystack Ventures Advisors ("HVA"), of which, notably, Defendant Oscodar serves as its sole owner and representative.  The ASA set forth HVIS's ability to terminate the agreement with Defendant HVA for any material breach by either party.

15.    Beginning in or around January 2016, Plaintiffs became increasingly concerned with the management and performance of HVIS and the manner in which Defendants distributed capital allocation, reported on the performance of certain properties, decisions made regarding property purchases, and related expenses.

16.    Additionally, a review of the initial reports appeared to show evidence of commingling of HVIS funds with other Oscodar investments that were neither approved nor related to the operation of HVIS.

17. On information and belief, Defendant HVA also commingled HVIS funds with the costs and/or expenses of Defendant HVA, ultimately adding to the detriment of the management and operation of HVIS.

18.    On investigating the matter further, Plaintiffs were unable to

COMPLAINT

attribute excessive overhead costs and on information and belief, believe that such costs were not related to the management and operation of HVIS as agreed upon. Plaintiffs further noted multiple financial errors in the documents to which Plaintiffs had access.  When Plaintiffs questioned Defendants about the suspect costs, Defendants failed to provide any substantive response, ultimately in breach of their duties of disclosure and disregard for provisions and protections within and inherent to the Shareholders' Agreement.

19.     Plaintiffs' investigation also revealed that Defendants incurred extremely high overhead expenses in the operation of HVIS that appear to have far exceeded what constitutes, "reasonable and customary operating expenses" as set forth in the Shareholders' Agreement.

20.     On information and belief, Defendants compensated Defendant

21.     HVA for services and reimbursed Defendant HVA for expenses  that were unreasonable and not agreed upon by Plaintiffs as set forth in the Shareholders' Agreement. Additionally, on information and belief, Defendant HVA had taken monies from HVIS in an amount that far exceeds what was previously agreed to and used for improper "personal" expenses such air fare, hotel accommodations, legal fees paid for services rendered to Defendant Oscodar personally or to Defendant HVA, its office staff, office space, and other expenses which would typically be shouldered as costs by a management company, rather than expenses by HVIS.

22.     As further evidence of Defendants' improper business practices, on one occasion, Plaintiffs erroneously overfunded one property purchase and repeatedly requested return of the monies.  However, to date, Defendants failed to return said monies, despite prior instructions to do so.  Even more egregious, Defendants recently attempted to re-characterize return of the overfunds as a

distribution, rather than refund of money erroneously paid, even though the overpayments were never intended to be an investment by HVIS.

23.     Accordingly, after revealing the suspect business practices identified herein, Plaintiffs instructed Defendants to cease investing or re-investing Plaintiffs' monies into any assets.   However, Defendants disregarded these instructions and the requirements set forth in the Shareholders' Agreement and continued to purchase properties without first obtaining the requisite approval from the Supervisory Board.

24.     Plaintiffs made approximately fifteen requests for an accounting of the operating costs and to examine the books and records (which, upon information and belief, are located in California) for HVIS beginning in or around May 2016 to present.

25.     However, in response to each of Plaintiffs' inspection demands, Defendants either produced inadequate reports and records or provided evasive and indirect responses, ultimately stonewalling all such requests.

26.     To date, Defendants have refused to make any of the books and records available for inspection, in direct breach of the Shareholder Agreement.

27. As a result of the foregoing, on or about March 13, 2017, on behalf of HVIS, Plaintiffs again gave notice of Defendant HVA's material breach of the ASA.  Despite such notice, Defendant HVA, through its words and conduct, repeatedly and unequivocally continues to demonstrate its intention to refuse to perform in accordance with the terms of the ASA.

28.     As such, on behalf of HVIS, Plaintiffs effectively terminated the ASA on or about March 20, 2017.  However, on or about March 27, 2017, Defendants refused to recognize and denied Plaintiffs' termination of the ASA, presumably to continue improperly paying themselves fees from HVIS.  Accordingly, Defendants effectively blocked

8

COMPLAINT

Plaintiffs from exercising their rightful option to terminate the ASA which was ultimately to the detriment of HVIS and its shareholders.

29.     Plaintiffs have not made any demand on the Board of Directors of HVIS to institute this action as such demand would be futile and useless act for at least the following reasons:

      a.  Currently, and at the time this action was initiated, the Board was comprised of two (2) members: Defendant Oscodar and Manacor (Luxembourg) S.A.;

      b.  Defendants are not independent directors and, thus, cannot consider a demand; and

      c.  Defendants are unable to disinterestedly consider a shareholder demand because they each face a substantial likelihood of liability as a result of their conduct.

## COUNT ONE

**Breach of Contract**

**(Against Defendant HVI)**

30.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

31.      The Shareholders' Agreement between Plaintiff Spanish Falcon and HVI is a valid and binding contract.

32.      A true and correct copy of the Shareholders' Agreement is attached hereto as Exhibit "A."

33.      Plaintiff Spanish Falcon has fully performed all of its obligations under the terms of the Shareholders' Agreement.

9

COMPLAINT

34.     With respect to any duty, covenant, or obligation, which Plaintiff Spanish Falcon may have failed to perform, it was excused from such performance by Defendant HVI's breaches of the Shareholders' Agreement.

35.      Defendant HVI repeatedly breached the Shareholders' Agreement in various ways, including but not limited to:

- Defendant HVI failed to "use its best endeavors to promote and develop the Business to the best advantage of [HVIS]" as agreed upon in the Shareholders' Agreement;
- Defendant HVI failed to maintain accurate and complete accounting and financial records;
- Defendant HVI purchased properties without obtaining the requisite approval of the HVIS Supervisory Board, pursuant to the Shareholders' Agreement;
- Defendant HVI breached the Shareholders' Agreement by failing to provide Plaintiff with relevant financial information (e.g. asset level reporting and operating expenses) relating to HVIS;
- Defendant HVI breached the Shareholders' Agreement by its repeated refusal to permit examination of their books and records, as explicitly allowed in both Agreements;
- Defendant HVI breached the Shareholders' Agreement by unilaterally making decisions regarding the activities of HVIS, such that the Initial Budget did not govern the activities of HVIS, and without decision and approval by the Supervisory Board;
- Defendant HVI breached the Shareholders' Agreement by failing to honor Plaintiff's right of first refusal to enter into other investments; and
- Defendant HVI breached the Shareholders' Agreement by failing to give full force and effect to the spirit and intention of the agreement.

36.     Accordingly, Defendant HVI's acts and omissions, as alleged above, constitute breaches of their contractual duties to act in good faith and deal fairly with Plaintiff.

37.     On information and belief, Defendant HVI's acts and omissions, as alleged above, were perpetrated in bad faith and wanton dishonesty, in a surreptitious manner, with the intent to appropriate from Plaintiff.

COMPLAINT

38.     As a direct and proximate result of Defendant HVI's material breach of the agreement, Plaintiffs suffered damages and irreparable harm, including but not limited to monies belonging to Plaintiffs related to an overfund of a property purchase; expenses including but not limited to allocation of corporate costs, legal, finance and accounting expenses, and valuation expenses;   and monies used to purchase property without first obtaining the requisite approval.

## COUNT TWO
### Derivative Claim for Breach of Contract
### (Against Defendant HVA)

39. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

40. The Advisory Services Agreement ("ASA") between Nominal defendant HVIS and Defendant HVA is a valid and binding contract.  A true and correct copy of the ASA is attached hereto as Exhibit "B".

41.     Nominal defendant HVIS has fully performed all of its obligations under the terms of the ASA and with respect to any duty, covenant, or obligation, which Nominal defendant HVIS may have failed to perform, it was excused from such performance by Defendant HVA's breaches of the ASA.

42. Defendant HVA repeatedly breached the ASA in various ways, including but not limited to: failing to maintain true and accurate books of account of all financial activities relating to its services; refusing access to books and records; failing to accept termination of the ASA upon the occurrence of a material breach; and commingling HVIS funds with the costs and/or expenses of Defendant HVA, ultimately adding to the detriment of the management and operation of HVIS.

43. As a direct and proximate result of Defendant HVA's material breach of

COMPLAINT

the ASA, Nominal defendant HVIS suffered damages and irreparable harm including but not limited to monies belonging to HVIS that Defendant HAV commingled; and expenses including but not limited to allocation of corporate costs, legal, finance, and accounting expenses.

## COUNT THREE

### Derivative Claim for Breach of Fiduciary Duty

### (Against Defendant Oscodar)

44.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

45.    Defendant Oscodar owed and owes HVIS fiduciary obligations, including the highest obligation of good faith, fair dealing, disclosure, loyalty, and care.

46.     Pursuant to such fiduciary duties, Defendant Oscodar was required to act in the utmost good faith and to avoid acts and omissions adverse to HVIS.

47.    Defendant Oscodar breached his fiduciary duties, including the duties of disclosure, loyalty, and care, by: causing or allowing HVIS to disseminate to Plaintiff materially misleading and inaccurate information through disclosure of inaccurate and misleading financial records and communications; refusing Plaintiff's right to access and inspect the books and records of HVIS; denying Plaintiff's right to terminate the ASA, which Plaintiff asserted on behalf HVIS; failing to use Oscodar's best endeavors to promote the operation of HVIS; and ultimately, by elevating Defendant's  own interests above those of HVIS, among other things.

48.    As a direct and proximate result of Defendant Oscodar's failure to perform his fiduciary obligations, HVIS has sustained significant damages, including but not limited to monies belonging to Plaintiffs related to an overfund of

the purchase of multiple properties; monies belonging to Plaintiffs related to the wrongful acquisition of a number of properties; monies taken from HVIS for expenses including but not limited to allocation of corporate costs, legal, finance and accounting expenses, and valuation expenses; and monies used to purchase property without first obtaining the requisite approval.

49. As a result of the misconduct alleged herein Defendant Oscodar is liable to HVIS.

## COUNT FOUR

**Derivative Claim for Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5**

**(Against all Defendants)**

50. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

51. By engaging in the conduct described above, Defendants, and each of them, directly or indirectly, in connection with the purchase or sale of securities and by the use of the means or instrumentalities of interstate commerce or of the mails, with scienter made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

52. Defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes and artifices to defraud and (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53. As a direct and proximate result of the foregoing, HVIS has sustained direct and significant damages, including but not limited to monies belonging to Plaintiffs related to an overfund of the purchase of multiple properties;

monies belonging to Plaintiffs related to the wrongful acquisition of a number of properties; monies taken from HVIS for expenses including but not limited to allocation of corporate costs, legal, finance and accounting expenses, and valuation expenses; and monies used to purchase property without first obtaining the requisite approval.

## COUNT FIVE

### Derivative Claim for Accounting

### (Against all Defendants)

54.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

55.    At all times, there existed a fiduciary or trust with respect to Defendants' dealings regarding HVIS.  Plaintiffs entrusted to Defendants their interest and monies regarding the operation and management of HVIS.

56.    As the foregoing alleges, Defendants have repeatedly breached their fiduciary duties to Plaintiffs.  Further, Defendants have refused to provide an accounting despite Plaintiffs' repeated requests.  Accordingly, the activities of Defendants as alleged above entitle Plaintiffs to an accounting by Defendants for all of the monies and any other property received by Defendants.

57.    No other remedy will adequately account for the full amount of monies that Defendants have wrongfully misappropriated from Plaintiffs.

## COUNT SIX

### Conversion

### (Against all Defendants)

58.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

COMPLAINT

59.     Plaintiffs believes, and on that basis alleges, that Defendants are in control over property that lawfully belongs to Plaintiffs, including but not limited to monies related to an overfund of a property purchase; monies taken from HVIS for expenses including but not limited to allocation of corporate costs, legal, finance and accounting expenses, and valuation expenses and monies used to purchase property without first obtaining the requisite approval (collectively referred to as "Property").

60.     Defendants' acts and omissions, as alleged above, were intended to and, in fact did appropriate to themselves, without justification, the ownership, rights, and interest in the Property that was rightfully owned by Plaintiffs and HVIS.

61.     Defendants converted and continue to convert such Property to their own personal use and have refused and continue to refuse to return said Property to Plaintiffs and HVIS, the rightful owners of the same, despite their repeated requests for the return of such Property.

62.     By reason of the foregoing, Plaintiffs and HVIS have sustained damages in that they have been wrongfully deprived of the converted property in an amount according to proof.

## COUNT SEVEN
### Constructive Trust
### (Against all Defendants)

63.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

64.     At all times, there existed a fiduciary or trust with respect to Defendants' dealings regarding HVIS.  In reliance thereon, Plaintiffs entrusted to Defendants their interest and monies regarding the operation and management of HVIS.

65.     Without justification, Defendants wrongfully: purchased properties

COMPLAINT

without obtaining the requisite approval and after Plaintiffs' instruction to do the contrary; refused to return overfunds rightfully belonging to Plaintiffs; and wrongfully appropriated Plaintiffs' property, including but not limited to monies belonging to Plaintiffs related to an overfund of the purchase of multiple properties; monies belonging to Plaintiffs related to the wrongful acquisition of a number of properties; monies taken from HVIS for expenses including but not limited to allocation of corporate costs, legal, finance and accounting expenses, and valuation expenses; and monies used to purchase property without first obtaining the requisite approval, among other things.  As a result of such conduct, Defendants have been unjustly enriched.

66.     By reason of the foregoing, Plaintiffs sustained damages in an amount according to proof.  Plaintiffs are entitled to the imposition of a constructive trust on any and all proceeds obtained by Defendants as a result of the foregoing conduct.

## COUNT EIGHT
### Derivative Claim for Unjust Enrichment
### (Against all Defendants)

67.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

68.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of HVIS.

69.     Plaintiff Spanish Falcon, as a shareholder and representative of HVIS, seeks restitution, damages, an order of this Court disgorging all profits, benefits, and other compensation obtained by these Defendants from their wrongful conduct and fiduciary breaches, and other relief for HVIS, in an amount to be proven at trial.

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.  Determining that this action is a proper derivative action maintainable under law and demand is excused;

2.  Awarding, against all Defendants and in favor of HVIS, the damages sustained by HVIS as a result of Defendants' breaches of fiduciary duties;

3.  Awarding, against all Defendants and in favor of Plaintiffs, the damages sustained by Plaintiffs as a result of Defendants' breaches of fiduciary duties;

4.  Awarding to HVIS restitution from Defendants, and from each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants during the Relevant Period;

5.  Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants', and experts' fees, costs and expenses; and

6.  Granting such other relief and further relief as the Court deems just and proper.


## **JURY DEMAND**

Plaintiffs demand a jury trial.


Dated:  April 6, 2017                          WEDGEWOOD OFFICE OF THE
                                               GENERAL COUNSEL



                                        By: _/s/ Seth P. Cox
                                               Seth P. Cox
                                               Julie A. Choi
                                               Elaine Yang
                                               Attorneys for Plaintiffs Falcon
                                               Ventures, LLC and Spanish Falcon
                                               Limited

COMPLAINT

1
2
3
4
5
6
7
8
9
10

## VERIFICATION

11      I, David Wehrly, declare:

12      I am the authorized agent of Plaintiff Spanish Falcon Limited, which is a

shareholder of nominal Defendant Haystack Ventures Inversiones Sarl ("HVIS"),

13  and have been during the relevant time period.  I certify under penalty of perjury

14  that I have read and reviewed the Verified Complaint and authorized its filing.

15  Based upon my and my counsel's investigation, the contents of the Verified

16  Complaint are true to the best of my knowledge, information and belief.

17

18

19  Date: April 6, 2017                    By: _____

20                                              David Wehrly

21
22
23
24
25
26
27
28

18

COMPLAINT